UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| WILSON ROAD DEVELOPMENT CORPORATION, et al.<br><br>Plaintiffs,<br><br>-vs-<br><br>FRONABARGER CONCRETERS, INC, et al.<br><br>Defendants. | CIVIL ACTION NO. 1:11-cv-00084-CEJ |

## **PLAINTIFFS' TRIAL BRIEF**

This case arises from chemical contamination on Plaintiffs' property caused by the activities of Defendant Fronabarger Concreters, Inc. ("Fronabarger") and Defendants Union Electric Company d/b/a Ameren Missouri ("Ameren") and Citizens Electric Corporation ("Citizens") (together, the "Utility Defendants"). Plaintiffs' property is located downhill from the Missouri Electric Works ("MEW") Superfund Site in Cape Girardeau, Missouri. Utility Defendants sent transformers and other electrical equipment to MEW for repair, sale or consignment for many decades, and are liable for contamination on the MEW Site and Plaintiffs' property under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") (42 U.S.C. §9601 *et seq.*). Defendant Fronabarger acquired the MEW Site in 2009 and during its land development caused contaminated stormwater to runoff onto Plaintiffs' property, thus becoming liable for the contamination under CERCLA and state tort law.

Plaintiffs seek damages from Fronabarger for nuisance (Count V), trespass (Count VI), and negligence (Count VII) caused by Fronabarger's failure to take reasonable and required protective measures to prevent contaminated soil from entering Plaintiffs' property.

Plaintiffs also seek (1) a declaratory judgment under CERCLA that Defendants are liable for chemical contamination on the MEW Site migrating onto Plaintiffs' property, (2) injunctive relief in the form of an order to all Defendants to remediate Plaintiffs' property, and (3) recovery of their already-incurred and future response costs, pursuant to CERCLA. (Counts I-IV).

Finally, Plaintiffs request that the court enter a default judgment against Morrill Development Company, Morrill Development LLC, Charles J. Morrill and Alan Morrill on the claims set forth in the Complaint.

## I. Defendant Fronabarger is liable for nuisance, trespass, and negligence.

### A. Fronabarger has knowingly and willfully maintained a nuisance on Plaintiffs' property.

A nuisance "is the unreasonable, unusual, or unnatural use of one's property so that it substantially impairs the right of another to peacefully enjoy his property."[1] There are two types of nuisance: temporary and permanent.[2] Where, as is the case here, a nuisance was caused by negligence and is abatable, it is temporary.[3]

The evidence will show Fronabarger substantially impaired Plaintiffs' right to peacefully enjoy their own property when, in violation of a known deed restriction, Fronabarger graded and excavated a known Superfund Site without installing erosion control measures. Fronabarger's representative admits that Fronabarger knew both that its property was contaminated and that the property had erosion problems when Fronabarger acquired the property. Fronabarger also knew

---

[1] *In re Genetically Modified Rice Litig.*, 666 F. Supp. 2d 1004, 1019 (E.D. Mo. 2009) (citing *Wallace v. Grasso*, 119 S.W.3d 567, 580 (Mo. Ct. App. 2003); *Henke v. Arco Midcon, L.L.C.*, 750 F.Supp.2d 1052, (E.D. Mo. 2010) (citing Missouri cases).

[2] *Cook v. Desoto Fuels, Inc.*, 169 S.W.3d 94, 106 (Mo. Ct. App. 2005).

[3] *Id.*

or should have known that the level of land-disturbing activities conducted by Fronabarger were in violation of a deed restriction. Yet, Fronabarger graded deep into the soil and piled the soil near a ravine located just uphill from Plaintiffs' property, without regard to where the soil went during rain events. As observed by Plaintiffs' experts, the sediment from Fronabarger's property washed down the ravine onto a public road and then onto Plaintiffs' property.

Nuisance damages are recoverable from Fronabarger for the time period beginning with Fronabarger's land disturbing activities through the filing of this lawsuit on May 11, 2011. The proper measure of damages for a temporary nuisance is the cost of restoration plus damages resulting from the loss of use of the property, as well as any special costs.[4] Plaintiffs' damages include those needed to compensate them for the loss of use of their property, costs required to abate the nuisance and restore the property, costs related to investigating the contamination, and amounts needed to compensate Plaintiffs for their loss of comfort and health.

Plaintiffs also are entitled to punitive damages against Fronabarger because Fronabarger "knowingly and willfully maintained the nuisance"[5] by knowingly grading and excavating in violation of a deed restriction, failing to correct erosion and stormwater runoff even after being notified by a City stormwater inspector, and continuing impermissible land disturbance activities even after this lawsuit was filed.

---

[4] *Scantlin v. City of Pevely*, 741 S.W.2d 48, 52 (Mo. Ct. App. 1987); *Stevinson v. Deffenbaugh Indus., Inc.*, 870 S.W.2d 851, 854 (Mo. Ct. App. 1993).

[5] *Vermillion v. Pioneer Gun Club*, 918 S.W.2d 827, 833 (Mo. Ct. App. 1996).

### B. Fronabarger's land-disturbing activities caused a continuing trespass upon Plaintiffs' property.

"A trespass involves interference with the plaintiffs' possessory rights and requires an intentional act that results in a physical invasion of plaintiffs' property."[6] In a case involving pollution, an action in trespass will lie where the pollution constitutes a direct physical interference with the plaintiffs' actual possession of the land.[7]

Fronabarger caused a trespass because its intentional land-disturbance activities on its upgradient property caused the physical invasion of chemical-laden sediments onto Plaintiffs' property. The evidence will show that when Fronabarger acquired the property they had actual or constructive knowledge of both existing contamination and deep erosion in the Southeast corner draining down to the Dumeys' property.[8] Yet Fronabarger failed to stabilize its property and commenced excavation activities without erosion controls. Plaintiffs' experts also observed sediment-laden stormwater from Fronabarger's property washing down the ravine onto Wilson Road and then onto Plaintiffs' property.

Plaintiffs are entitled to recover damages for trespass in amounts reflecting "natural, necessary, direct, and proximate consequences of the [defendant's] wrongful acts."[9] Where, as here, the trespass is "continuing," Plaintiffs can recover damages accrued within the five-year

---

[6] *Henke*, 750 F.Supp.2d at 1058 (trespass may result through "knowledge of the spills and leaks and the continued migration of the contaminants and ... fail[ure] to take any action to remove them from Plaintiffs' property") (citing *Cook*, 169 S.W.3d at 102).

[7] *Md. Heights Leasing v. Mallinckrodt*, 706 S.W.2d 218, 225-226 (Mo. Ct. App. 1985) (emissions may constitute trespass where particulate settles on property and renders it unfit).

[8] McMullin deposition.

[9] *See Moore v. Dudley*, 904 S.W.2d 496, 499 (Mo. Ct. App. 1995).

period preceding the filing of the lawsuit.[10] And because the trespass is "temporary" and amenable to restoration, Plaintiffs are entitled to recover for the cost of restoration *and* the loss of use of the property.[11] In the alternative, if the trespass is deemed to be "permanent," then Plaintiffs are entitled to recover the diminution in property value, unless the costs of repair are less than the diminution in value.[12]

Plaintiffs are also entitled to recover punitive damages against Fronabarger for trespass, since Fronabarger's trespass was "malicious, willful, intentional or reckless."[13] The evidence will show that Fronabarger was aware that its conduct caused contaminated sediments to physically invade Plaintiffs' property and that Fronabarger continues to knowingly and willfully maintain the trespass despite being put on notice of the harm its activities have caused Plaintiffs.

### C. Fronabarger was grossly negligent in digging up a Superfund site without taking necessary and appropriate erosion control measures.

To prove negligence, Plaintiffs "must establish that there was a duty and that the breach of that duty was the proximate cause of ... injury."[14] A duty of care is imposed when there is "a foreseeable likelihood that particular acts or omissions will cause harm or injury,"[15] and "may be imposed by a controlling statute or ordinance, assumed by contract, or imposed by common

---

[10] *Cook*, 169 S.W.3d at 105.

[11] *Sterbenz v. Kan. City Power and Light Co.*, 333 S.W.3d 1, 8-9 (Mo. Ct. App. 2010).

[12] *Sternbenz*, at 9 and n.9; *Hostler v. Green Park Dev. Co.*, 986 S.W.2d 500, 506 (Mo. Ct. App. 1999).

[13] *Md. Heights Leasing*, 706 S.W.2d at 226; *Hostler*, 986 S.W.2d at 507.

[14] *Hoffman v. Union Elec. Co.*, 176 S.W.3d 706, 708 (Mo. 2005) (En Banc); *see also Md. Heights Leasing*, 706 S.W.2d at 223.

[15] *Md. Heights Leasing*, 706 S.W.2d at 223 (finding defendant had duty of care to adjoining business owners in handling radioactive materials).

law."[16] Ultimately, "judicial determination of the existence of a duty rests on sound public policy."[17]

Fronabarger had a duty to exercise reasonable care in conducting its land disturbance activities. As a developer, Fronabarger had a duty, during land excavating, to refrain from channeling water onto adjacent property.[18] Fronabarger also had a duty not to violate the deed restriction and to conduct excavation and grading of contaminated soils in a reasonable manner. There was a "foreseeable likelihood" that Plaintiffs would be harmed by Fronabarger's land development without erosion controls.[19] Fronabarger breached its duty by piling soil near a ravine upgradient from Plaintiffs' property and by failing to implement adequate erosion control measures. Fronabarger further breached its duty by violating the terms of its Stormwater Management Permits,[20] by failing to obtain a permit from the Missouri Department of Natural Resources, and by failing to install or maintain erosion control measures as amply documented by the local stormwater inspector.[21] These failures directly caused the Plaintiffs' harm.

The general rule in Missouri is that the measure of damage for injury to real property is the diminution in value, *i.e.*, the difference between the fair market value before and after the event causing the damage.[22] An exception to the general rule applies only where the costs to

---

[16] *Boggs v. Lay*, 164 S.W.3d 4, 15 (Mo. Ct. App. 2005).

[17] *Id.*

[18] *Concannon v. Hanley Dev. Corp*, 769 S.W.2d 183 (Mo. Ct. App. 1989) (developer channeling water onto adjacent property was liable for negligence, in addition to nuisance and trespass)

[19] *Md. Heights Leasing*, 706 S.W.2d at 223.

[20] *See* FCI 0000362 – 364.

[21] *See* WRDC 000082 – 130.

[22] *Sheridan v. Sunset Pools of St. Louis, Inc.*, 750 S.W.2d 639, 641 (Mo. Ct. App. 1988).

repair the property are less than the difference in market value.[23] Here, Plaintiffs are seeking damages associated with diminution in value.

Punitive damages are also authorized against Fronabarger for its negligence in this case, because they knew or should have known with a "high degree of probability" that their actions or non-actions would injure Plaintiffs' property.[24] The evidence will show that Fronabarger continued its reckless land-disturbance activities even after being informed of the contamination and despite local stormwater inspectors repeatedly instructing Fronabarger to employ appropriate erosion control measures.

### D. That others may have also harmed Plaintiffs' property does not negate Fronabarger's liability.

Based on its land-disturbing activities and failure to utilize appropriate erosion control measures, Fronabarger is liable for the full extent of damage to Plaintiffs' property, regardless of whether the Utility Defendants or anyone else has also contributed to Plaintiffs' property damage. And it does not matter that some other individual's injury to Plaintiffs' property preceded Fronabarger's injury in time:

> According to the great weight of authority, where the concurrent or successive negligent acts or omissions of two or more persons, although acting independently of each other, are, in combination, the direct and proximate cause of a single injury to a third person, and it is impossible to determine in what proportion each contributed to the injury, either is responsible for the whole injury, even though his act alone might not have caused the entire injury, or the same damage might have resulted from the act of the other tortfeasor, and the injured person may at his option or election institute suit for the resulting damages against any one or more of

---

[23] *Id.*

[24] *See Hoover's Dairy Inc. v. Mid-Am. Dairymen, Inc.*, 700 S.W.2d 426, 435-36 (Mo. 1985); *Md. Heights Leasing*, 706 S.W.2d at 224 (wrongdoer must know that act is wrongful).

such tort-feasors separately, or against any number or all of them jointly.[25]

Any argument that Fronabarger "is not jointly liable for the single, indivisible injury to [Plaintiffs' property] is absolutely devoid of merit."[26] Fronabarger's land-disturbing activity and failure to utilize appropriate erosion control measures caused contaminated soil to leave its property and wash onto and damage Plaintiffs' property. Thus, Fronabarger has, at the least, contributed to Plaintiffs' damage, and Fronabarger is jointly and severally liable to Plaintiffs.

## II. Plaintiffs are entitled to declaratory relief and recovery of CERCLA response costs from all defendants.

To establish a *prima facia* case for cost recovery under CERCLA Section 107(a), Plaintiffs must prove that: 1) a release or threatened release of a hazardous substance; 2) from a facility; 3) caused Plaintiffs to incur response costs, that are necessary and consistent with the National Contingency Plan (NCP); and 4) Defendants fit into one of the four categories of responsible persons.[27]

Plaintiffs seek recovery of their past costs from all Defendants, as well the Court's declaration that Defendants are liable for Plaintiffs' future response costs.[28] As part of the

---

[25] *Glick v. Ballentine Produce Inc.*, 396 S.W.2d 609, 612 (Mo. 1965) (overruled on other grounds); *See also* collected Notes on Use of Missouri Approved Instruction 19.01.

[26] *Schiles v. Schaefer*, 710 S.W.2d 254, 267 (Mo. Ct. App. 1986) (overruled on other grounds); *See also Wagner v. Bondex Int'l, Inc.*, 368 S.W.3d 340, 348 (Mo. Ct. App. 2012) (explaining that the "but for" test for causation applies in all cases *except* for cases involving two or more independent torts, either of which was sufficient in and of itself to cause the injury).

[27] 42 U.S.C. § 9607(a); *see United States v. Hercules*, 247 F.3d 706, 715 (8th Cir. 2001); *U.S. v. Dico*, 2012 WL 4361414, *6 (S.D. Iowa Sept. 24, 2012).

[28] *See, e.g.*, 40 U.S.C. § 9613(g)(2)(B) (court shall enter declaratory judgment "on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages"); *Laidlaw Waste Sys., Inc. v. Mallinckrodt, Inc.*, 925 F. Supp. 624, 632 (E.D. Mo. 1996) (declaratory judgment is authorized under CERCLA).

declaratory judgment, Plaintiffs also seek the Court's declaration that Plaintiffs are innocent contiguous landowners, not liable under CERCLA.[29]

### A. Hazardous substances were released from a facility.

The first two CERCLA elements are readily established and generally undisputed in this case. The MEW Site is a "facility" under 42 U.S.C. § 9601(9), which includes "any area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located."[30] PCBs are "hazardous substances" under 42 U.S.C. § 9601(14). There has been a "release" of hazardous substances from the MEW Site within the meaning of 42 U.S.C § 101(22), broadly defined to include any spilling, leaking, emitting, discharging, escaping, leaching, dumping, or disposing into the environment. Plaintiffs will present fact and expert testimony showing that a release of PCBs occurred and continues to occur and that PCBs have migrated onto Plaintiffs' Property.

### B. Plaintiffs incurred costs necessary and consistent with the NCP.

The third CERCLA element is that Plaintiffs incurred response costs that are necessary and consistent with the NCP. As this Court previously observed:[31]

> The term "to incur" is not defined by CERCLA, but has been interpreted to reach beyond those who actually paid for response costs.[32] Instead, "a finding

---

[29] *See* 42 U.S.C. § 9607(q) (owners of property "contiguous to or otherwise similarly situated" to contaminated properties are not liable "owners" or "operators" under CERCLA provided certain criteria are met).

[30] *See* Consent Decree, *U.S. v. Union Elec. Co., et al.*, 1:92-CV-00078 (E.D. Mo 1994) (Section I.H; Section II "Definition").

[31] *See* Memorandum and Order, Dkt. No. 138, pp. 16-17 (internal citations omitted).

[32] *Trimble v. Asarco, Inc.*, 232 F.3d 946, 957, n.14 (8th Cir. 2000) ("To incur means to become liable for or subject to; it does not mean to actually pay for."), abrogated on other grounds by *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005) (quoting *Quarles Petroleum Co. v. U.S.*, 551 F. 2d 1201, 1205 (Ct. Cl. 1977); *see also Town of New Windsor v. Tesa Tuck,*

that a cost has been 'incurred' may be based on an existing legal obligation" to pay, even if that existing obligation is later satisfied by a third party.

Whether Plaintiffs incurred response costs is disputed by Defendants on the grounds that costs were paid by Brenda Kay Construction, Inc. ("BKC") rather than the named Plaintiffs. However, the evidence will demonstrate that Plaintiffs have "incurred" recoverable response costs, including investigative consultant costs and attorneys' fees.

Plaintiff Wilson Road Development Corporation ("WRDC") received invoices, sent to the attention of Plaintiff Brenda K. Dumey, the secretary and treasurer of WRDC, which show that WRDC incurred an obligation to pay for response costs associated with environmental investigation of the Dumey property. "CERCLA plainly contemplates liability for site assessment."[33] Thus, Plaintiffs' investigation costs are recoverable under CERCLA.[34]

C. **Defendants are within the categories of responsible persons under CERCLA.**

Regarding the fourth CERCLA element, all Defendants are categorically liable parties, in that Fronabarger is a current owner and operator, and Utility Defendants arranged for disposal.

1. **Fronabarger is a current owner and operator.**

As current owner of the MEW Site, Fronabarger is liable unless it demonstrates the applicability of a statutory defense.[35] None of the statutory defenses in 42 U.S.C. § 9607(b) are

---

*Inc.*, 935 F. Supp. 317, 321 (S.D. NY 1996); *Jacksonville Elec. Auth. v. Eppinger and Russell Co.*, 2005 WL 3533163, *10 (M.D. Fla. 2005).

[33] *Johnson v. James Langley Operating Co.*, 226 F.3d 957, 962 (8th Cir. 2000).

[34] *See id.* at 964 (testing and sampling expenses are necessary when there is an "objectively reasonable belief that the defendant's release or threatened release of hazardous substances would contaminate his or her property").

[35] *See* 42 U.S.C. § 9607(b); *United States v. Hercules*, 247 F.3d 706, 715 (8th Cir. 2001) ("CERCLA liability attaches notwithstanding any other provision or rule of law, and subject only to ... [certain] defenses") (internal quotes and alterations omitted).

available to Fronabarger, because it caused the release and threatened release of hazardous substances.[36]

The pollution is not resulting from an act of God or war, and Fronabarger is not an "innocent landowner" or "bona fide prospective purchaser."[37] Fronabarger is estopped from raising such defenses because it excavated and graded a known Superfund Site and piled contaminated soil near the ravine, resulting in a release and continuous threatened release of PCBs onto Plaintiffs' property. These same activities qualify Fronabarger as an "operator," further subjecting it to CERCLA liability.[38]

### 2. The Utility Defendants arranged for disposal.

The issue of arranger liability is central to this litigation. By entering into the Consent Decree with EPA in the 1990s, Utility Defendants avoided litigating this issue for two decades and continually delayed the investigation and cleanup of Plaintiffs' property. In those two decades, arranger liability under CERCLA has been interpreted and reinterpreted by the courts, including by the Supreme Court in *Burlington N. & Santa Fe Ry. Co. v. United States*.[39]

---

[36] With regard to Defendants' CERCLA counterclaims against Plaintiffs, the evidence will show that Plaintiffs (unlike Defendants) do meet one or more CERCLA defenses, including the "innocent adjacent landowner" defense. *See* 42 U.S.C. § 9607(q) (owners of property "contiguous to or otherwise similarly situated" to contaminated properties are not liable "owners" or "operators" under CERCLA provided certain criteria are met). Plaintiffs are innocent victims adversely affected by upgradient contamination that they had no part in causing.

[37] 42 U.S.C. § 101(35)(A), § 101(40), and § 9607(b).

[38] *See Control Data Corp. v. S.C.S.C. Corp.*, 53 F.3d 930, 937 (8th Cir. 1995) (discussing authority and control over operations as basis for operator liability).

[39] 556 U.S. 599, 610 (2009).

Plaintiffs have extensively briefed arranger liability in their summary judgment papers and respectfully refer the Court to those papers instead of repeating detailed arguments here.[40]

The evidence at trial will show, as it has all along, that Utility Defendants intended the disposal of hazardous substances and, therefore, are "arrangers" subject to CERCLA liability. Under the totality of the circumstances, Utility Defendants intended disposal because they sent leaking, used transformers to MEW for decades and turned a blind eye to MEW business practices. Utility Defendants were the two biggest customers of MEW, knew they had PCBs in transformers, and knew they had an outlet for disposal of their transformer oils by sending them to MEW, ostensibly for sale or repair. The evidence will show that Utility Defendants retained ownership over transformers they sent for repair, under circumstances where disposal of PCB-contaminated oil was intended by Utility Defendants and was indeed unavoidable. The evidence will further show that Utility Defendants sold leaking, junk transformers for which there was no developed market. MEW speculated when purchasing transformers and Utility Defendants received *de minimis* credits for their useless junk. These circumstances, individually and collectively, show intent to dispose and that Utility Defendants are arrangers under CERCLA.

### D. Plaintiffs are excluded from CERCLA liability as innocent landowners and contiguous property owners.

Plaintiffs seek a declaratory judgment from the Court that they are not "owners" within the meaning of 42 U.S.C. § 9607(a), because they are innocent land owners and contiguous property owners.[41] The evidence in this case will show that Plaintiffs can meet the elements of these exceptions to CERCLA's broad liability net. Plaintiffs will show that parties other than the Plaintiffs were the sole cause of the release of PCBs, that Plaintiffs do not have a contractual

---

[40] Dkt. Nos. 103, 127-1.

[41] 42 U.S.C. §§ 9607(b), 9601(35)(A); 9607(q).

relationship with liable parties that caused contamination at or from the MEW Site, and that Plaintiffs have exercised due care with respect to PCB contamination on their property and the adjacent public road. Plaintiffs have cooperated with EPA and the PRP group, allowing them continuous access to their property. Plaintiffs also have conducted their own investigation, reported the results to EPA, allowed their pond to be fenced and wells to be installed on their property, and filed the Complaint in this instant case to expedite cleanup.

### III. Substantive and Procedural Issues

Plaintiffs' common law damages claims (Counts V through VIII) will be tried to a jury. The evidence Plaintiffs plan to present at trial will be relevant to their claims under CERCLA and the common law counts, and that is one reason Plaintiffs have opposed the Utility Defendants' motion to sever and bifurcate the trial. Plaintiffs request, pursuant to Federal Rule of Civil Procedure 39(c), that the Court allow the jury to serve in an advisory capacity over all CERCLA claims, with the Court ultimately deciding the CERCLA claims.[42]

Notwithstanding this, Plaintiffs believe there are two main issues to be resolved separately from the jury trial proceedings: (1) determining the scope of injunctive relief; and (2) default judgment proceedings against Charles J. Morrill and Alan Morrill d/b/a Morrill Development Company and Morrill Development, LLC (collectively, "Morill Defendants").

First, Plaintiffs seek injunctive relief that only the Court can provide. Beyond a declaration of future CERCLA liability, Plaintiffs seek injunctive relief to restrain and affirmatively prevent further erosion from the MEW property and to require Defendants to

---

[42] Plaintiffs originally demanded a jury trial on Counts III and IV, pertaining to past response costs, but given the overlapping allegations with Counts I and II, Plaintiffs believe that the Court should decide all CERCLA claims, with the jury serving in an advisory capacity only on those claims. If necessary, Plaintiffs will file a separate motion requesting that the jury serve in an advisory capacity for the CERCLA claims.

investigate and remediate the full extent of contamination. The necessity and scope of injunctive relief properly depends on whether Plaintiffs prevail on the merits at trial, and the complex nature of the cleanup renders careful consideration of how an order would be crafted. Plaintiffs therefore believe that proposed orders concerning the nature and scope of injunctive relief should be submitted after the trial and that the Court should consider additional hearings as needed.

Second, the Court has entered default against the Morrill Defendants. Plaintiffs request that the court set a hearing under Rule 55(b)(2) of the Federal Rules of Civil Procedure in order to determine the form and amount of the default judgment. Plaintiffs believe this hearing should be set separately from and subsequent to the immediate trial.

This 21st day of July, 2014.

| | |
|---|---|
| BALLARD SPAHR LLP | O'LOUGHLIN, O'LOUGHLIN & KOETTING, L.C. |
| /s/ Leah J. Knowlton | |
| Leah J. Knowlton (admitted pro hac vice) | Tom K. O'Loughlin II |
| Byung J. Pak (admitted pro hac vice) | Missouri Bar No. 24611 |
| Keisha O. Coleman (admitted pro hac vice) | Federal Bar No. 24611MO |
| 999 Peachtree Street, Suite 1000 | 1736 N. Kingshighway |
| Atlanta, Georgia 30309 | Cape Girardeau, Missouri 63701 |
| (678) 420-9300 | (573) 334-9104 |
| knowltonl@ballardspahr.com | tomo@oloughlinlawfirm.com |
| pakb@ballardspahr.com | |
| colemank@ballardspahr.com | |

Jennifer E. Drust (admitted pro hac vice)
1735 Market Street, 51st Floor
Philadelphia, Pennsylvania 19103
(215) 665.8500
drustj@ballardspahr.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the forgoing *Plaintiffs' Trial Brief* was served on the following parties via the ECF system on July 21, 2014.

| | |
|---|---|
| Dale A. Guariglia | John F. Cowling |
| Brittany D. Batchelor | Stephen M. Limbaugh, Sr. |
| Rhiana A. Luaders | Scott K.G. Kozak |
| BRYAN CAVE LLP | ARMSTRONG TEASDALE LLP |
| One Metropolitan Square | 7700 Forsyth Blvd., Suite 1800 |
| 211 N. Broadway, Suite 3600 | St. Louis, MO 63105 |
| St. Louis, MO 63102-2750 | |

                                                  */s/ Leah J. Knowlton*
                                                  Leah J. Knowlton