UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| WILSON ROAD DEVELOPMENT CORPORATION, et al. | ) ) ) |
| Plaintiffs, | ) ) CIVIL ACTION NO. 1:11-cv-00084-CEJ |
| -vs- | ) ) ) |
| FRONABARGER CONCRETERS, INC, et al. | ) ) ) |
| Defendants. | ) |

**PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER
AND FOR LEAVE TO FILE THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiffs respectfully move this Court to amend its Scheduling Order, pursuant to Federal Rule of Civil Procedure Rule 16(b)(4), to allow Plaintiffs to file this Motion for Summary Judgment on CERCLA liability and Memorandum in Support, submitted herewith, and to set an expedited schedule for further proceedings on this motion. In support of their motion, Plaintiffs state as follow:

1. Plaintiffs filed their complaint under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") seeking to recover response costs they have incurred investigating contamination on their property and a declaratory judgment holding Defendants liable for all future response costs associated with investigating and remediating their property. The case is set for bench trial before this Court on August 17, 2015.

2. Under this Court's scheduling order, as amended, dispositive motions were due on or before January 22, 2013. Plaintiffs did not file any dispositive motions at that time. Defendants filed a motion asking the Court to grant summary judgment in their favor on Plaintiffs' CERCLA claims. This Court denied that motion. In its decision, the Court analyzed

the applicable law governing arranger liability and identified the key factors that prove intent to arrange for disposal under CERCLA.  In its order, which postdated the summary judgment deadline, the Court laid out its view of the state of the law in the 8th Circuit regarding arranger liability.  By doing so, the case became one of fact.  The question now is with the advent of expert depositions, more recent Environmental Protection Agency ("EPA") documents, new admissions in recent pretrial filings, and, newly acquired documents (*see* Defendants' Motion to Strike, Doc. #341), does the Court have the ability to decide the issue of liability?  The answer is yes.

3. At the time of the dispositive motion deadline, Plaintiffs were not in a position to prove, through undisputed facts, Defendants' intent to arrange for disposal under CERLCA.  In fact, Defendants had denied some of the key factual prerequisites to relief.  Despite having signed a Consent Decree to remediate the MEW site, agreed to an allocation formula within the MEW Site Trust Donors ("MEWSTD") that anoints these two defendants as the highest volume viable contributors of contamination at the MEW Site, and, having paid close to a million dollars each in MEW Site remediation and investigation costs, which includes an initial study of conditions on the Dumey property and erecting a six foot fence around the Dumeys' pond to bar visitors, the Defendants have consistently argued that they did ***nothing*** to release the contaminants from the MEW site to the Dumey property.  But, after the summary judgment deadline, Defendants' experts admitted in their depositions on Jan. 1, 2013 and December 2, 2014, that the groundwater and sediment under and on the Dumey property was contaminated by releases from the MEW.  *See* Exhibits to the Statement of Uncontroverted Facts, filed concurrently herewith.

4. These same defendants, including Warren Mueller (a current Union Electric

employee), have been in negotiations, along with their counsel from Armstrong Teasdale, for the implementation of a PCB soil investigation and remedy on the Dumey property for the last several years, which resulted in the issuance of the Scope of Work ("SOW") which Plaintiffs received within the last thirty days. (Defendants have recently moved to strike the SOW. *See* Doc. #341). It was not until Plaintiffs received EPA's negotiated SOW and the Third Five-Year Review, both of which postdate the original summary judgment deadline, that Plaintiffs could demonstrate that EPA has made a decision that the Dumeys' property requires further investigation as a result of releases from the MEW Site. *See* E-mail from Steven Sanders, Senior Counsel, U.S. EPA, Region 7, to Leah J. Knowlton, Partner, Ballard Spahr LLP (June 24, 2015) (forwarding final Statement of Work, dated August 13, 2014) (Doc. #354-1); *see also* U.S. Environmental Protection Agency, Third Five-Year Review Report (July 2014). Until receipt of the Third Five-Year Review and, more importantly, the SOW, the Defendants' experts have argued that nothing needs to be done at the site. The SOW is the only document which that specifically sets out what EPA is requiring the Defendants and other responsible parties to do on the property in terms of a remedial investigation and feasibility study.

5. The Husch Blackwell ("HB") firm and its attorneys were asked to join in the prosecution of this case within the last two months. Prior to being involved in this case, the HB attorneys were involved in lengthy battles with the defendants and the United States regarding the MEW Site. These included three separate federal cases in the Eastern District of Missouri with one going up twice to the 8th Circuit Court of Appeals. These cases spanned nearly two decades. As a result, the HB firm was in possession of key historical documents that were not produced by Defendants in this case, despite pertinent discovery requests and production of related documents by Defendants. In each of those three cases, Defendants' new counsel was

representing the same Defendants/MEW Steering Committee ("MEWSC") and participated in each of the depositions referenced in the Memorandum in Support of Motion for Summary Judgment.  These documents include the following:  MEW employee testimony relating to the handling of equipment and junking (the Defendants identified one deposition of eight); a key deposition of the government's project manager for the MEW Site, who provided an analysis of the government's investigation of practices and extent of contamination at the Site and its conclusions drawn from what they saw, as told by eye witnesses, and testing (defendants produced her two affidavits but not her deposition testimony); and allocation documents providing that Defendants were the two largest volumetric contributors of transformers to the MEW Site (the defendants produced a section of the allocation formula which did not identify the internal allocation approved by the Defendants in their position on the MEWSC).  None of these documents were known to the Plaintiffs and their counsel before HB entered the case.  These documents are, in large part, documents from the Defendants themselves or were generated under their direction with the involvement of their counsel.  Presenting them through this Motion for Summary Judgment will provide the Court with the very information, along with Defendants' admissions, necessary for this court to grant summary judgment on Defendants' arranger liability under CERCLA.

      6.      On top of these recent developments, Defendants' trial brief filed on July 17, 2015, contains key admissions on the relevant factors underlying arranger liability as identified by this Court.  For instance, Defendants acknowledge that:

- "The Utility Defendants intended the transformers sent to MEW to be repaired." Defendant Union Electric Co. & Citizens Electric Corp.'s Trial Brief, Doc. #346, at 3.

- "[S]ome transformers provided to MEW for repair were drained of oil or non-functional." *Id.* at 3.

- "Undisputed evidence establishes that the Utility Defendants intended to receive the transformers back after repairs." *Id.* at 4.[1]

7. Those admissions, in conjunction with other undisputed facts and Defendants' own documents, now establish Defendants' CERCLA liability as a matter of law. Application of this Court's prior legal analysis to the admitted and undisputed facts clearly proves Defendants' intent to arrange for disposal under CERCLA. *See* Plaintiffs' Memorandum in Support of Motion for Summary Judgment, filed herewith. By their own admission, Defendants have acknowledged that this disposal led to the contamination of the Dumey property.

8. In light of these recent—and game-changing—developments, Plaintiffs request that this Court amend its scheduling order to grant Plaintiffs leave to submit this Motion for Summary Judgment on CERCLA liability. Rule 56(b) grants this Court discretion to allow the filing of a summary judgment motion outside the timeframes contained therein. And Rule 16(b)(4) allows this Court to amend its schedule for good cause. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Glover v. Life Skills Foundation, et al.*, No. 4:12-cv-1280, 2013 WL 646779 at *1 (E.D. Mo. Feb. 21, 2013) (quotations omitted). Once the movant has established diligence, the Court may also consider the potential prejudice to the nonmovant. *Id*.

9. This Court acknowledged and applied this standard in its recent Order denying

---

[1] Although some of this information may have appeared in Defendants' earlier argument, this was the first time Defendants went on the record regarding their knowledge of what was to occur at MEW. This is definitely the first time they have admitted that they sent transformers to the site that were "nonfunctional" in addition to being drained of oil at the Site.

Plaintiffs' motion to amend its Complaint. *See* ECF No. 363 (citing *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717 (8th Cir. 2008)). But this Court's concern that Plaintiffs did not act diligently to move to amend does not apply with respect to this Motion. Not only did Plaintiffs not have the facts necessary to file their motion for summary judgment in accordance with the Court's scheduling order, they did not have some of the admissions and other relevant documents until a few weeks ago.

10. Defendants did not make the critical admissions that provide grounds for the Plaintiffs' motion until Defendants filed their trial brief on July 17, 2015. Nor did Plaintiffs have some of the deposition testimony and documents cited in their Motion until a few short weeks ago. Since obtaining the information apprising them of the potential for summary judgment, Plaintiffs' counsel has acted with diligence in evaluating the new information, and preparing their summary judgment motion.

11. Plaintiffs' request to file their Motion for Summary Judgment will not unduly prejudice Defendants. Plaintiffs' Motion for Summary Judgment is based upon application of the legal principles previously determined by this Court (and previously briefed by the parties) to straightforward facts, all of which are established by the Defendants' own admissions, Defendants' witness testimony, or Defendants' documents. Defendants and/or their counsel were involved in all of the very proceedings from which the Plaintiffs secured these documents, and the very fact that similar documents from these proceedings were injected into this case by Defendants makes any semblance or argument of prejudice a non-issue. Plaintiffs' motion does not raise any new issues or require any additional discovery.

12. For these reasons, good cause exists to modify the scheduling order at this time. *See Glover*, 2013 WL 644779 at *1-2 (finding good cause to allow defendants to modify

scheduling order to amend answer when defendants only recently discovered facts to support new defense); *Greater St. Louis Const. Laborers Welfare Fund, et. al. v. J. Stanford Contractor Services, LLC.*, No. 4:08CV01766, 2009 WL 1872534 (E.D. Mo. June 29, 2009) (finding good cause to modify scheduling order to allow defendants to state new affirmative defenses when defendants acted promptly upon receiving discovery supporting defenses and prejudice to plaintiff was minimal).

13.  This is particularly true where, as here, the Defendants' failure to timely produce relevant documents contributed to the Plaintiffs' inability to comply with the scheduling order. *See Andretti v. Borla Performance Ind. Inc.*, 426 F.3d 824, 830 (6th Cir. 2005)(finding good cause to modify scheduling order to permit defendant's late filing of summary judgment motion when, *inter alia*, the plaintiff did not complete compelled responses to defendant's discovery until after the dispositive motion deadline had passed, the motion raised an issue of justiciability, and plaintiff failed to demonstrate prejudice).[2]  This Court has found good cause to modify a scheduling order when the delay is caused by the nonmovant's failure to timely produce relevant files:  "The Court finds that the plaintiff's failure to meet the deadline established by the Case Management Order was not due to a lack of diligence on her part." *See Nine v. Williams,* No. 4:11-cv-353, 2012 WL 3815627 at *2 (E.D. Mo. Sept. 4, 2012) (Judge C. Jackson).

14.  Granting Plaintiffs' motion will facilitate orderly and efficient resolution of the issues and avoid a waste of unnecessary resources by this Court and the parties.  A trial on liability will require detailed testimony of several witnesses and presentation of numerous exhibits.  Summary judgment on liability would greatly curtail the length and complexity of a

---

[2]  Plaintiffs have previously identified to this Court substantial and important documents that Defendants failed to produce in response to discovery requests.

trial. And, based upon the facts now admitted by Defendants, the inevitable result of a trial is a judgment in favor of the Plaintiffs on liability. *See Crane Const. Co. v. Klaus Masonry,* 71 F. Supp. 1138, 1144 (D. Kan. 1999)(allowing dispositive motion after scheduling order deadline when trial was futile because plaintiff could not survive a Rule 50 motion for judgment as a matter of law, all parties would incur needless expense in preparing for a trial, and the court would waste judicial resources).

15.   Moreover, summary judgment on liability may obviate the need for a trial altogether. If the Court finds CERCLA liability as a matter of law, the Plaintiffs will approach EPA and promptly begin negotiations to perform the EPA-required RI/FS as set out in the SOW. This would greatly expedite the final resolution of this matter and the goals of CERCLA, *i.e.*, the remediation of contaminated property. During the past fifteen years, and despite pressure from the Missouri Department of Natural Resources and the EPA, no EPA-approved remedial investigation has been undertaken and the Plaintiffs' property has remained in its contaminated state. The Plaintiffs understand that it will be difficult for this Court to fashion timely relief should it find the Plaintiffs' cause to be just. However, if Plaintiffs move expeditiously to perform the EPA-required investigation, a remedy can more promptly be determined, and at that point, either the Plaintiffs can implement the remediation at the costs of Defendants or Defendants can implement the remedy.

16.   For all of these reasons, and to further the interests of efficiency and common sense, good cause exists for this Court to grant the instant motion to amend the scheduling order and allow Plaintiffs to file their summary judgment motion on liability. In addition, due to the straightforward nature of Plaintiffs' motion and the impending trial date, Plaintiffs request this Court to expedite further proceedings on its motion, setting response dates and reply dates of

August 7, 2015 and August 12, 2015 respectively.

    WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Modify Scheduling Order, grant leave for Plaintiffs to file their Summary Judgment Motion on CERCLA liability, and expedite further proceedings on said Motion as requested herein.

This 31st day of July, 2015.

        Respectfully submitted,

        HUSCH BLACKWELL LLP

        */s/ Joseph G. Nassif*
        Joseph G. Nassif
        Bar No. 24181MO
        Jason A. Flower
        Bar No. 54000MO
        190 Carondelet Plaza, Suite 600
        St. Louis, Missouri 63105
        (314) 480-1500
        joseph.nassif@huschblackwell.com
        jason.flower@huschblackwell.com

| BALLARD SPAHR LLP | O'LOUGHLIN, O'LOUGHLIN, & KOETTING, LC |
|---|---|
| Leah J. Knowlton | Tom K. O'Loughlin II |
| Admitted pro hac vice | Bar No. 24611MO |
| Keisha O. Coleman | 1736 N. Kingshighway |
| Admitted pro hac vice | Cape Girardeau, Missouri 63701 |
| 999 Peachtree Street, Suite 1000 | (573) 334-9104 |
| Atlanta, Georgia 30309 | tomo@oloughlinlawfirm.com |
| (678) 420-9300 | |
| knowltonl@ballardspahr.com | |
| colemank@ballardspahr.com | |

        *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served on all parties via the ECF system on the 31st day of July, 2015.

                                             */s/ Joseph G. Nassif*
                                             Joseph G. Nassif