UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

WILSON ROAD DEVELOPMENT )
CORPORATION, et al. )
 )
           Plaintiffs, ) CIVIL ACTION NO. 1:11-cv-00084-CEJ
 )
     -vs- )
 )
FRONABARGER CONCRETERS, INC, et al. )
 )
           Defendants. )

## PLAINTIFFS' STATEMENT OF UNCONTROVERTED FACTS

COME NOW Plaintiffs, under Rule 56 of the Federal Rules of Civil Procedure and Local Rule 4.01(E), and submit the following statement of material facts that are uncontroverted:

1.     Missouri Electric Works, Inc. owned approximately 6.4 acres of property at 824 South Kingshighway, Cape Girardeau, Missouri from 1954 to 2008 (hereinafter referred to as the "MEW Property"). The MEW Property was operated by Missouri Electric Works, Inc. ('MEW") from 1953 until the mid-1980s. (Doc. #348, ¶1).

2.     Between 1953 and the mid-1980s, MEW purchased, sold, and repaired electrical equipment at the MEW Property. MEW bid on and purchased transformers from companies throughout the country to resell to private business, public institutions, and utilities in need of transformers. (Doc. #348, ¶2).

3.     Repairs of transformers at the MEW Site inherently involved leaks, spills, and disposals of transformer oil. (Exhibit D, Deposition of Jimmy Lancaster, at 57:13-22, 58:21-59:1, 68:9-70:8, 77:13-79:1; Exhibit G, Deposition of Pauletta France-Isetts, at 15:18-22, 21:6-12, 21:18-21, 66:7-11).

4.     MEW kept hundreds of "junk" transformers in an area near a dump at the back of the property. (Exhibit E, Deposition of Willard King, at 11:9-21).  In the process of "junking" these transformers, oil was spilled at the back of the property. (Exhibit E, Deposition of Willard King, at 17:7-13 & 17:17-24; Exhibit G, Deposition of Pauletta France-Isetts, at 27:1-4).

5.     During visits to the MEW Site by Missouri Department of Natural Resources in 1984, leaking transformers sitting outside were observed along with bulging and leaking drums of oil.  Exhibit G, Deposition of Pauletta France-Isetts, at 21:6-12.  Over 100 such drums of transformer oil were observed at the site and tested positive for PCBs. *Id.* at 21:18-21.

6.     The EPA began investigating the MEW Site in the mid-1980s.  (Doc. #348, ¶4). EPA commenced an extensive investigation of the conditions at the MEW Site under the direction

of Paulett France-Isetts in 1986.  (Exhibit G, Deposition of Pauletta France-Isetts, at 9:3-10).

7.      In 1988, EPA and a group of potentially responsible parties ("PRPs") formed the Missouri Electric Works Steering Committee ("MEWSC").  The MEW Site became a Superfund Site in 1990.  The MEWSC conducted a remedial investigation and feasibility study on  the MEW Property.  (Doc. #348, ¶4).

8.      From 1988 through 1991, EPA sent notice letters to hundreds of PRPs inviting PRPs to participate in settlement negotiations.  Negotiations between the MEWSC, EPA and the Missouri Department of Natural Resources resulted in the entry of a Consent Decree by this Court.  The Consent Decree required the settling PRPs to perform soil remediation and a ground water study at and around the MEW Site and to reimburse the EPA for its oversight costs.  (Doc. #348, ¶5).

9.      The PRPs that signed the Consent Decree were termed "Settling Defendants" by the Consent Decree.  The Settling Defendants were legally obligated to perform the work under the Consent Decree regardless of the cost.  (Doc. #348, ¶6).

10.      Defendants Union Electric d/b/a Ameren Missouri ("Union Electric") and Citizens Electric Corporation ("Citizens") were two of the largest contributors among the 42 Settling Defendants.  (Exhibit N, at 3).

11.      The investigation and remediation of contamination associated with the MEW Property was divided into three operable units ("OUs") that include: OU 1 soils, OU 2 groundwater, and OU 3 off-site wetlands.  (Doc. #348, ¶9).

12.      The OU 1 soil remedy included the excavation and thermal treatment of soils on the MEW Property.  (Doc. #348, ¶11).

13.      The Plaintiffs' Property is located downhill from the MEW Property.  (Doc. #348, ¶14).

14.      MEW kept records on transformers that were sent to MEW as junk, as well as for repair or resale.  (Doc. #88, ¶5; Doc. #348; Exhibit E; Exhibit I).

15.      Many of the MEW records were transferred to the EPA in the 1980s.  (Doc. #88-5, at ¶2; Doc. #348).

16.      Ameren is an electric utility.  Its predecessor, Union Electric Company conducted business with MEW and NES. Over the years, Union Electric sold transformers to MEW and NES and sent transformers to MEW for repair.   MEW records indicate that Union Electric sold to MEW or MEW and NES, or sent to MEW for repair, a total of 2,104 transformers.  (Doc. #348, ¶19; *see also* Doc. #346, at 3).

17.      Citizens is an electric utility that conducted business with MEW.   Between 1954 and 1975, Citizens sold a few transformers to MEW and sent transformers to MEW for repair. MEW records indicate that Citizens sold to MEW or MEW and NES and sent to MEW for repair

a total of 716 transformers. (Doc. #348, ¶20; *see also* Doc. #346, at 3).

18. Defendants Union Electric and Citizens Electric sent nearly 3,000 transformers and other electrical equipment to MEW for "junking," repair, sale, consignment, or disposal. (Doc. #352, at 1).

19. Some of the transformers that Union Electric and Citizens sent to the MEW Site contained PCBs. (Exhibit A, Deposition of Warren Mueller, at 124:18-125:2; Exhibit K, Deposition of Mary Sorensen, at 13:21-14:1).

20. Union Electric and Citizens sent used transformers to MEW to be dismantled, drained of oil that contained PCBs, and filled with new oil. (Exhibit C; *see also* Doc. #346, at 3 (stating "some transformers provided to MEW for repair were drained of oil or non-functional").

21. Hundreds of transactions involving transformers sent to MEW by Union Electric and Citizens involved transformers that were described as "junk." (Exhibit E; Exhibit G, Deposition of Pauletta France-Isetts, at 71:15-19).

22. Union Electric and Citizens retained ownership of the transformers sent to MEW for repair and intended to receive the transformers back after repairs. (Doc. #346, at 4; Exhibit A, Deposition of Warren Mueller, at 118:24-19:3; Exhibit B, Deposition of Van Robinson, at 34:19-23).

23. Union Electric and Citizens made no effort to minimize disposal of wastes. (Exhibit A, Deposition of Warren Mueller, at 119:4-21; Exhibit B, Deposition of Van Robinson, at 67:2-15).

24. By the late seventies Union Electric became aware of the additional precautions necessary in the handling of PCB containing equipment, but Union Electric continued to send transformers containing PCBs to MEW until 1986. (Exhibit A, Deposition of Warren Mueller, at 94:1-21).

25. After the United States sent a CERCLA § 104(e) notice to Union Electric, Union Electric bought back nearly 57 of its former transformers from MEW and had the transformers tested. (Exhibit M, at Bates No. CA002050). All of the transformers were found to contain PCBs. *Id.*

26. PCBs on the Plaintiffs' property came from the MEW Site. (Exhibit L, Deposition of Michael Ellis, at 134:11-15 & 135:19-25; Exhibit K, Deposition of Mary Sorensen, at 13:21-14:1).

This 31st day of July, 2015.

Respectfully submitted,

HUSCH BLACKWELL LLP

*/s/ Joseph G. Nassif*
Joseph G. Nassif
Bar No. 24181MO
Jason A. Flower
Bar No. 54000MO
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
(314) 480-1500
joseph.nassif@huschblackwell.com
jason.flower@huschblackwell.com

BALLARD SPAHR LLP                              O'LOUGHLIN, O'LOUGHLIN, & KOETTING, LC

Leah J. Knowlton                               Tom K. O'Loughlin II
Admitted pro hac vice                          Bar No. 24611MO
Keisha O. Coleman                              1736 N. Kingshighway
Admitted pro hac vice                          Cape Girardeau, Missouri 63701
999 Peachtree Street, Suite 1000               (573) 334-9104
Atlanta, Georgia 30309                         tomo@oloughlinlawfirm.com
(678) 420-9300
knowltonl@ballardspahr.com
colemank@ballardspahr.com

*Attorneys for Plaintiffs*

SLC-7632171-2

4

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all parties via the

ECF system on the 31st day of July, 2015.


          */s/ Joseph G. Nassif*
          Joseph G. Nassif