UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

WILSON ROAD DEVELOPMENT           )
CORPORATION, et al.,              )
                                  )
          Plaintiffs,             )
                                  )
    vs.                           )         Case No. 1:11-CV-84 (CEJ)
                                  )
FRONABARGER CONCRETERS, INC.,     )
et al.,                           )
                                  )
          Defendants.             )

## <u>MEMORANDUM AND ORDER</u>

This matter is before the Court on the motion of plaintiffs, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to alter or amend the judgment entered on September 16, 1016. Defendants have filed a response in opposition and the issues are fully briefed.

Rule 59(e) allows a district court to correct its own mistakes in the time period immediately following entry of judgment. *Norman v. Ark. Dep't of Educ.*, 79 F.3d 748, 750 (8th Cir. 1996) (citing *White v. N.H. Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982)). Rule 59(e) motions serve a limited function of correcting "manifest errors of law or fact or to present newly discovered evidence." *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998) (internal quotation and citations omitted). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.*

"To prevail on a Rule 59(e) motion, the movant must show that (1) the

evidence was discovered after trial; (2) the movant exercised due diligence to discover the evidence before the end of trial; (3) the evidence is material and not merely cumulative or impeaching; and (4) a new trial considering the evidence would probably produce a different result." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006).

In support of the instant motion, plaintiffs first argue that they discovered new evidence after the trial. [Doc. #408 at 3]. Specifically, they claim that they learned of a settlement agreement between the United States Environmental Protection Agency (EPA) and defendants Union Electric Company and Citizens Electric Corporation (the "Utility Defendants"). Plaintiffs assert that this settlement agreement would have changed the outcome of the Court's decision. According to the plaintiffs, the agreement demonstrates that plaintiffs' "investigative and monitoring costs," which they sought to recover under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), were (1) necessary and (2) consistent with the National Contingency Plan (NCP). *Id.* at 5–6; *see* 42 U.S.C. §§ 9601 *et seq.*

The settlement agreement, and more accurately, the work plan incorporated therein,[1] acknowledges the potential validity of plaintiffs' studies, and describes the *sum of the data* collected from investigations conducted by various entities in 2005, 2006, 2009, 2011, 2012, and 2014 as "robust."[2] [Doc. #408-1 at 42–43]. It notes that although no additional "field sampling is anticipated," that "[t]his will be

---

[1] The Remedial Investigation Work Plan prepared by PSC Industrial Outsourcing, LP, is incorporated into the settlement agreement pursuant to section XXVII. [Doc. #408-1 at 26].
[2] For example, the 2005 and 2006 reports "were done in coordination with the USEPA." *Id.* at 42. The report lists the plaintiffs' contested reports as "Limited Soil Investigation Report, Wilson Road Property by S&ME (April 2011)" and "Limited Soil Investigation Report by Burnside Environmental Group (September 2012)." *Id.* at 53.

confirmed when the data is validated, analyzed and submitted to USEPA as part of the [remedial investigation]." *Id.* at 48.[3] One of the stated goals of the work plan is to evaluate the data, which a preliminary review indicated to be "valid and usable." *Id.* at 59. More precisely, the work plan aims to "document that the data collected for the litigation efforts also conforms to USEPA quality requirements for usability in the [remedial investigation/ feasibility study] process." *Id.* at 43. As such, the work plan expressly details the extensive "focused quality assurance validation" that will be required for those reports. *Id.* at 59–64.

The Court finds that this agreement does not constitute "new evidence," but rather, "is merely a newly created opinion based on facts known to or accessible" to plaintiffs at the time of trial; such a submission "cannot warrant relief under Rule 59(e)." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 935 (8th Cir. 2006)*; see also Swope v. Siegel-Robert, Inc.*, 243 F.3d 486 (8th Cir. 2001). The Court agrees with defendants that this type of expert opinion evidence could have been presented at trial.

Assuming *arguendo* that this settlement agreement did constitute "new evidence" as an admission, it would not sufficiently cure deficiencies in plaintiffs' case such that the result would differ. *See* [Doc. #417 at 1]. The Court identified a number of evidentiary problems with plaintiffs claim for response costs. *See* [Doc. #401]. The scientific validity of the S&ME and Burnside Environmental reports was only one of the problems the Court found. There were also issues with the specificity and clarity of invoices, the dearth of witness testimony to explain claimed expenses, the adequacy of documentation, and the simplicity of a report that

---

[3] And should "deficiencies or gaps" after a review of the whole data set, "then sampling work plans will be prepared to address those needs." *Id.* at 43.

seemed to only confirm what plaintiffs already knew. *See id.* Moreover, the plaintiffs overstate the agreement's validation of the data;[4] although the work plan states that a preliminary review indicated the data might be usable, it does not rise to the level of proving these were necessary response costs consistent with the NCP. The remedial investigation work plan does not fully cure nor even address all of the informational gaps and NCP compliance issues in plaintiffs' case.

Plaintiffs also argue that the Court made manifest errors of law. [Doc. #408 at 9]. First, citing *Young v. United States*, 394 F.3d 858 (10th Cir. 2005), plaintiffs assert that the costs incurred constituted "preliminary efforts to identify the extent of the PCB contamination." *Id.* Accordingly, they argue that the studies did not solely serve plaintiffs' litigation efforts. *Id.* This argument fails. The Court previously found that "[b]y 2003 it was known that the Dumey property was contaminated with PCBs from the MEW site," and that "[t]he evidence shows that S&ME's investigation in 2010 sought to prove that same information." [Doc. #401 at 33]. And, moreover, Burnside Environmental employee Felix Fleshas "testified that Burnside Environmental's goal was to determine 'whether hazardous substances had been released from the MEW site to the Dumey property,' not to prove the scope of the contamination or reveal new contamination." *Id.* Accordingly, plaintiff's claim is not supported by the record.

Plaintiffs also claim that the Court "mistakenly determined that [p]laintiffs' response costs were inconsistent with the NCP." [Doc. # 408 at 10]. The Court

---

[4] Additionally, the assertion that "if Plaintiffs had not performed their sampling, Utility Defendants would have had to incur similar costs developing the data," finds no support in the record and is merely speculative. *See* [Doc. #408 at 8]. Similarly unavailing is plaintiffs' contention that they "were forced" to hire consultants due to the Utility Defendants' gamesmanship. This argument does not tend to show that these response costs were necessary or substantially complied with NCP requirements. *See id.* at 11–12.

erred, according to plaintiff, in requiring more than substantial compliance with the NCP. *Id.* at 11. But, plaintiffs still do not provide *any* evidence of compliance with the NCP. Rather, they argue that *Young* should not apply; they claim that "other courts that have specifically addressed the issue of preliminary investigatory and monitoring costs' consistency with the NCP are in agreement that those costs are recoverable *irrespective* of their consistency with the NCP." *Id.* (citing *Am. Nat'l Bank & Trust Co. v. Harcros Chem., Inc.*, 997 F. Supp. 994 (N.D. Ill. 1998); *Gache v. Town of Harrison, N.Y.*, 813 F. Supp. 1037 (S.D.N.Y. 1993); *City of New York v. Chem. Waste Disposal Corp.*, 836 F. Supp. 968 (E.D.N.Y. 1993); *Marriott Corp. v. Simkins Indus., Inc.*, 825 F. Supp. 1575 (S.D. Fla. 1993)). [Doc. #408 at 10]. As previously noted, the Court already determined that these were not mere preliminary investigatory tests, and in fact, were duplicative of "tests previously conducted by the EPA." [Doc. #401 at 23].[5] Regardless, the Court finds no manifest error of law in its application of *Young.*

As a corollary to the above argument, plaintiffs claim that the Court's finding of non-compliance with the NCP is based on faulty grounds. [Doc. #408 at 12]. They assert that response costs should have been classified as a "removal action." [Doc. #408 at 13]. Plaintiffs claim that as a function of that classification, only the requirements of 40 C.F.R. § 300.415 apply to this case. And further, plaintiffs caveat, that the requirements of § 300.415(b)(4)(ii) do not govern preliminary site evaluations. *Id.* at 13. Again, an argument resting on the premise that these were preliminary investigations fails. Thus, as the Court previously reasoned, whether

---

[5] This conclusion similarly precluded plaintiffs' argument, on the basis of *Young*, that "costs for initial investigation and monitoring might be compensable if linked to an actual effort to contain or cleanup an actual or potential release of hazardous substances." 394 F.3d 858 at 865.

characterized as a removal or a remedial action, the plaintiffs failed to substantially comply with the NCP. The Court therefore disagrees with plaintiffs and finds no manifest errors of law in its prior decision.

Accordingly,

**IT IS HEREBY ORDERED** that the movant's motion to alter or amend the judgment [Doc. # 407] is **denied**.


_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE


Dated this 17th day of January, 2017.